## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ELSIE METCALFE, on behalf of Plaintiff and all others similarly situated, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HYUNDAI CAPITAL AMERICA, d/b/a Hyundai Capital America, Inc., Kia Finance America, Genesis Finance, Hyundai Motor Finance, Kia Motors Finance and Hyundai Finance; HYUNDAI LEASE TITLING TRUST; GRIECO HYUNDAI LLC; and JOHN DOES 1-10, | ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.     Plaintiff Elsie Metcalfe brings this action against Defendants Hyundai Capital America, Hyundai Lease Titling Trust, Grieco Hyundai LLC and John Does 1-10, to secure redress for the unlawful practice of charging consumers who purchase vehicles at the end of a lease more than the lease end purchase price specified in the lease.

### JURISDICTION AND VENUE

2.     This Court has federal question subject matter jurisdiction under 28 U.S.C. §§1331 (federal question), 1332(d) (special diversity provisions of the Class Action Fairness Act), 1337 (commerce) and 1367 (supplemental jurisdiction) and 15 U.S.C. §§1667d and 1640 (Consumer Leasing Act).

3.     There are more than 100 class members.  The total amount in controversy on a classwide basis exceeds $5 million.

4.     The Court has personal jurisdiction over Defendants Hyundai Capital America and Hyundai Lease Titling Trust because they engage in transactions with consumers in this District.

1

Venue is proper for the same reason.

5.      Defendant Grieco Hyundai LLC is located in this District.

## PARTIES

6.      Plaintiff Elsie Metcalfe is an individual who resides in Rhode Island.

7.      Defendant Hyundai Capital America, d/b/a Hyundai Capital America, Inc.,  Kia Finance America, Genesis Finance, Hyundai Motor Finance,  Kia Motors Finance, Kia Motors Finance Company, Hyundai Finance is a California corporation with its principal office at 3161 Michelson Drive, Suite 1900, Irvine, CA 92612.  It does business in Rhode Island.  Its registered agent and office is National Registered Agents, Inc., 450 Veterans Memorial Parkway, Suite 7A, East Providence,  RI  02914.  It is engaged in the business of arranging for the leasing of motor vehicles to consumers.  It is an affiliate of Hyundai Motor America and Kia Motors America, which distribute Hyundai, Genesis and Kia motor vehicles.

8.      Defendant Hyundai Lease Titling Trust, d/b/a Hyundai Lease Titling Trust, Inc., is a Delaware statutory trust entity or corporation.  In either case, it is entitled to sue and be sued in its own name.

9.      Defendant Hyundai Lease Titling Trust has its principal office at 3161 Michelson Drive, Suite 1900, Irvine, CA 92612.  It does business in Rhode Island.  Its registered agent and office is National Registered Agents, Inc., 450 Veterans Memorial Parkway, Suite 7A, East Providence,  RI  02914.  Its trustee is US Bank Trust National Association, 190 S. LaSalle St., 7th Floor, Chicago, IL 60603.   It is engaged in the business of holding leases of motor vehicles to consumers.  It is an affiliate of Hyundai Capital America, Hyundai Motor America and Kia Motors America.

10.     Defendant Hyundai Capital America acts as the servicing agent of Hyundai Lease Titling Trust with respect to leases placed in the Trust.

11.     Defendant  Grieco Hyundai LLC is a limited liability company organized under Rhode Island law with its principal office at 1890 Hartford Avenue, Johnston,  RI  02919, where it

operates a new and used car dealership.  Its registered agent is Scott R. Olenski at that address.

12.    Defendants John Does 1-10 are other persons responsible for the conduct complained of herein.

### FACTS

13.    Plaintiff Elsie Metcalfe leased a 2019 Hyundai Elantra.

14.    The lessee is designated in the lease as Grieco Hyundai LLC.

15.    A copy of the lease is in Exhibit A.

16.    The Consumer Leasing Act, 15 U.S.C. §1667(1), defines "consumer lease" as "a contract in the form of a lease or bailment for the use of personal property by a natural person for a period of time exceeding four months, and for a total contractual obligation not exceeding $50,000, primarily for personal, family, or household purposes, whether or not the lessee has the option to purchase or otherwise become the owner of the property at the expiration of the lease, except that such term shall not include any credit sale as defined in section 1602(g) of this title. Such term does not include a lease for agricultural, business, or commercial purposes, or to a government or governmental agency or instrumentality, or to an organization."

17.    The lease to Plaintiff was a consumer lease.

18.    The Consumer Leasing Act, 15 U.S.C. §1667(3), defines "lessor" as "a person who is regularly engaged in leasing, offering to lease, or arranging to lease under a consumer lease."

19.    Because of the role of Hyundai Capital America and Hyundai Lease Titling Trust with respect to the lease, each of them is a "lessor" also, in that they arranged the lease and devised the terms on which the lease would be made, i.e., offered to lease.

20.    The lease provided that upon execution it would be assigned to Hyundai Lease Titling Trust.  On information and belief, this was done.

21.    The lease provided that Hyundai Capital America would service the lease, receive payments, and deal with the lessee.

22.    The lease was a standard form prescribed by Hyundai Capital America for use by

3

Hyundai and Kia dealers.

23.    Hyundai Capital America directs Hyundai and Kia dealers how to complete the form lease.

24.    It is the practice of Hyundai Capital America to have Hyundai Lease Titling Trust acquire leases from Hyundai and Kia dealers immediately upon origination, before the first monthly payment is due.

25.    It is the practice of Hyundai Capital America and Hyundai Lease Titling Trust to review the lease before it is originated, i.e., Hyundai Capital America advises the dealer whether it will accept a lease on terms submitted.

26.    The lease was held by Hyundai Lease Titling Trust.

27.    The lease provided that the lessee could purchase the leased vehicle at the end of the least for the "residual value," an amount specified in the lease, plus a "purchase option fee," also specified in the lease, plus any official fees, taxes, title, and registration.  The sum of these three items is hereinafter referred to as the "lease end purchase price."  The "lease end purchase price" does not include the price of extended warranties, service contracts or other products besides the vehicle itself.

28.    In the case of Plaintiff's lease, the residual value was $9,220.80 and the "purchase option fee" was $300, for a total of $9,520.80.

29.    Plaintiff sought to purchase the vehicle at the end of the lease.

30.    A substantial portion of lessees purchase their vehicles at the end of the lease.

31.    One of the advantages of leasing vehicles is that it allows the consumer to try out the vehicle for an extended period before having to decide whether to purchase it.

32.    Also, the lease payments are lower than the payments on an installment contract for the purchase of a vehicle.

33.    Plaintiff contacted Hyundai Capital America as the end of the lease approached.

34.    There is no ready means whereby a consumer can contact Hyundai Lease Titling

Trust. Rather, the consumer is directed to contact Hyundai Capital America, which services leases on behalf of Hyundai Lease Titling Trust.

35.    Hyundai Capital America directed Plaintiff to Grieco Hyundai LLC.

36.    Hyundai Capital America invariably directs lessees who wish to turn in or purchase their vehicles at lease end to a Hyundai or Kia dealer.

37.    Hyundai Capital America does not have the physical facilities to handle returned off-lease vehicles.

38.    Hyundai Capital America prefers to have Hyundai or Kia dealers handle the sale of off-lease vehicles to consumers, although it could handle such transactions itself.

39.    Allowing Hyundai or Kia dealers handle the sale of off-lease vehicles to consumers facilitates transfer of the vehicle to the consumer, as the dealer is familiar with state registration requirements.

40.    Allowing Hyundai or Kia dealers handle the sale of off-lease vehicles to consumers gives the dealer the opportunity to sell additional products, such as service contracts and extended warranties.

41.    The Hyundai or Kia dealer acts as the agent of Hyundai Capital America and Hyundai Lease Titling Trust with respect to the disposition and sale of the off-lease vehicle, as Hyundai Lease Titling Trust owns the vehicle and Hyundai Capital America services the lease on behalf of Hyundai Lease Titling Trust.

42.    Grieco Hyundai LLC charged Plaintiff, on behalf of Hyundai Lease Titling Trust and Hyundai Capital America, more than the lease end purchase price to purchase the vehicle.

43.    Exhibit B is the retail purchase agreement relating to the lease-end purchase. Exhibit C is the retail installment contract relating to the lease-end purchase.

44.    In these documents, Plaintiff was charged $11,920 (the $11,520 cash price plus the $400 documentary fee) for the vehicle instead of $9,520.80.

45.    Plaintiff did not understand the numbers or realize that Grieco Hyundai LLC was

charging her more than her lease provided.

46.     This type of markup is a common practice on the part of Hyundai Capital America, Hyundai Lease Titling Trust and Hyundai and Kia dealers.

47.     Hyundai Capital America and Hyundai Lease Titling Trust are aware of the practice, and have been for years.

48.     Hyundai Capital America and Hyundai Lease Titling Trust allow Hyundai and Kia dealers to charge more than the lease end purchase price.

49.     There are numerous complaints from consumers about Hyundai and Kia dealers charging more than the lease end purchase price. (Exhibits D-F)

50.     Since and Hyundai Lease Titling Trust is the owner of the leased vehicle and holder of the lease, it has the obligation to honor the lease end purchase price.    So does its servicer, Hyundai Capital America, and their agent, Grieco Hyundai LLC.

51.     If and Hyundai Lease Titling Trust and Hyundai Capital America choose to have Hyundai and Kia dealers handle lease-end transactions on their behalf, they have the obligation to cause their dealer-agents to honor the lease end purchase price.

52.     The Consumer Leasing Act, 15 U.S.C. §1667a(5), requires the lessor to accurately disclose "the amount or method of determining the amount of any liabilities the lease imposes upon the lessee at the end of the term and whether or not the lessee has the option to purchase the leased property and at what price and time".

53.     Similarly, implementing Regulation M, 12 C.F.R. Part 1013, requires the lessor to accurately disclose "whether or not the lessee has the option to purchase the leased property, and . . . [i]f at the end of the lease term, the purchase price; . . . ." 12 C.F.R. §1013.4(i).

54.     Because all Defendants knows in advance of entering into a lease that (i) Hyundai Capital America refers consumers at lease end to Hyundai and Kia dealers and (ii) that those dealers charge the consumer more than the lease end purchase price, and (iii) the dealer will be permitted to do so by Hyundai Capital America and Hyundai Lease Titling Trust, each Defendant knows that its

6

disclosure of the "purchase price" in the printed lease form is inaccurate.

## COUNT I – BREACH OF CONTRACT

55.  Plaintiff incorporates paragraphs 1-54.

56.  This claim is against Hyundai Lease Titling Trust.

57.  Hyundai Lease Titling Trust breached the lease by allowing Grieco Hyundai LLC to charge Plaintiff and others an amount in excess of the lease end purchase price for the vehicle.

## CLASS ALLEGATIONS

58.  Plaintiff brings this claim on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

59.  The class consists of: (a) all persons in the United States (b) who leased vehicles (c) on a lease that was held by Hyundai Lease Titling Trust or serviced by Hyundai Capital America at its end (d) where the person purchased the vehicle at the end of the lease and (e) was charged more than the lease end purchase price, (f) where the termination of the lease was on or after a date 4 years prior to the filing of this action (the Uniform Commercial Code statute of limitations).

60.  The exact number of class members is unknown and not available to Plaintiff at this time, but it is clear that there are more than 40 persons who fall into each class and subclass definition in this action and that individual joinder is impracticable. Class members can be identified through Defendants' records. Defendants are required to maintain records of lessees and purchasers.

61.  Plaintiff reserves the right to modify the class definition as the contours and parameters of the class become apparent through discovery in this matter and to account for any legal and factual developments.

62.  Plaintiff's claims are typical of the claims of other members of the class, in that all claims are based on the same factual and legal theories.

63.  Plaintiff will fairly and adequately represent and protect the interests of the classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no

interest antagonistic to those of the class members, and Defendants have no defenses unique to Plaintiff.

64.     There are questions of law and fact common to the claims of Plaintiff and the class members, and those questions predominate over any questions that may affect individual members of the class. The common questions include:

a.     Whether Hyundai Lease Titling Trust and its servicer Hyundai Capital America are obligated to charge the lease end purchase price, whether they carry out the transaction directly or through a Hyundai or Kia dealer.  (Count I)

b.     Whether Hyundai Lease Titling Trust breaches its lease contract when the consumer is charged more than the lease end purchase price to acquire the leased vehicle at the end of the lease.  (Count I)

c.     Whether the disclosures in the lease are inaccurate because of the practice of allowing Hyundai and Kia dealers to charge more than the lease end purchase price.  (Count II)

d.     Whether the practice of Hyundai Lease Titling Trust, Hyundai Capital America and the dealers through which lease end purchase transactions are carried out is unfair and deceptive.  (Count III)

e.     Whether the Hyundai and Kia dealers, and Hyundai Capital America as agent of Hyundai Lease Titling Trust, are tortiously interfering with the lease contract.  (Count IV)

f.     Whether the Hyundai and Kia dealers unjustly enrich themselves (Count V).

65.     Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages suffered by the individual members of the class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the

8

individual members of the class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and subclass members and against Defendant Hyundai Leasing Titling Trust for:

      i.     Actual damages equal to the excess paid over the lease end purchase price;

      ii.    Costs of suit;

      iii.   Such other or further relief as the Court deems proper.

## COUNT II – CONSUMER LEASING ACT

66.     Plaintiff incorporates paragraphs 1-54.

67.     This claim is against all Defendants.

68.     Defendants violated 15 U.S.C. §1667a(5) and 12 C.F.R. §1013.4(i) by understating the lease end purchase price disclosed in the lease.

## CLASS ALLEGATIONS

69.     Plaintiff brings this claim on behalf of a class and subclass pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

70.     The class consists of: (a) all persons in the United States (b) who leased vehicles (c) on a lease that was held by Hyundai Lease Titling Trust or serviced by Hyundai Capital America at its end (d) where the person purchased the vehicle at the end of the lease and (e) was charged more than the lease end purchase price, (f) where the termination of the lease was on or after a date 1 year prior to the filing of this action (15 U.S.C. §1640).

71.     The subclass consists of persons whose lease was originated through Grieco

Hyundai LLC.

72.    The exact number of class members is unknown and not available to Plaintiff at this time, but it is clear that there are more than 40 persons who fall into each class and subclass definition in this action and that individual joinder is impracticable. Class members can be identified through Defendants' records.  Defendants are required to maintain records of lessees and purchasers.

73.    Plaintiff reserves the right to modify the class definition as the contours and parameters of the class become apparent through discovery in this matter and to account for any legal and factual developments.

74.    Plaintiff's claims are typical of the claims of other members of the class and subclass, in that all claims are based on the same factual and legal theories.

75.    Plaintiff will fairly and adequately represent and protect the interests of the classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the class members, and Defendants have no defenses unique to Plaintiff.

76.    There are questions of law and fact common to the claims of Plaintiff and the class members, and those questions predominate over any questions that may affect individual members of the class. The common questions include:

     a.    Whether Hyundai Lease Titling Trust and its servicer Hyundai Capital America are obligated to charge the lease end purchase price, whether they carry out the transaction directly or through a Hyundai or Kia dealer.  (Count I)

     b.    Whether Hyundai Lease Titling Trust breaches its lease contract when the consumer is charged more than the lease end purchase price to acquire the leased vehicle at the end of the lease.  (Count I)

     c.    Whether the disclosures in the lease are inaccurate because of the practice of

allowing Hyundai and Kia dealers to charge more than the lease end purchase price. (Count II)

    d.      Whether the practice of Hyundai Lease Titling Trust, Hyundai Capital America and the dealers through which lease end purchase transactions are carried out is unfair and deceptive. (Count III)

    e.      Whether the Hyundai and Kia dealers, and Hyundai Capital America as agent of Hyundai Lease Titling Trust, are tortiously interfering with the lease contract. (Count IV)

    f.      Whether the Hyundai and Kia dealers unjustly enrich themselves (Count V).

77.      Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual members of the class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and subclass members and against Defendants for:

    i.      Statutory damages;

    ii.      Actual damages equal to the excess paid over the lease end purchase price;

    iii.      Attorney's fees, litigation expenses and costs of suit (15 U.S.C. 1640);

    iv.      Such other or further relief as the Court deems proper.

### COUNT III – UNFAIR AND DECEPTIVE ACTS AND PRACTICES

78.    Plaintiff incorporates paragraphs 1-54.

79.    This claim is against all Defendants.

80.    Defendants violated R.I. Gen. Laws §6-13.1-2 by:

      a.    Inaccurately disclosing the lease end purchase price in their leases;

      b.    Charging consumers more than the lease end purchase price specified in their leases.

81.    R.I. Gen. Laws §6-13.1-2 provides that " Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."

82.    R.I. Gen. Laws §6-13.1-3 provides that "It is the intent of the legislature that in construing §§ 6-13.1-1 and 6-13.1-2 due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to § 5(a) of the Federal Trade Commission Act. 15 U.S.C. §45(a)(1), as from time to time amended."

83.    R.I. Gen. Laws §6-13.1-5.2 provides:

(a) Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by § 6-13.1-2, may bring an action under the rules of civil procedure in the superior court of the county in which the seller or lessor resides; is found; has his or her principal place of business or is doing business; or in the superior court of the county as is otherwise provided by law, to recover actual damages or five hundred dollars ($500), whichever is greater. The court may award damages equal to three (3) times the amount of actual damages and, in its discretion, provide other equitable relief that it deems necessary or proper.

(b) Persons entitled to bring an action under subsection (a) of this section may, if the unlawful method, act, or practice has caused similar injury to numerous other persons similarly situated and if they adequately represent the similarly situated persons, bring an action on behalf of themselves and other similarly injured and situated persons to recover damages as provided for in subsection (a) of this section. In any action brought under this section, the court may in its discretion order, in addition to damages, injunctive or other equitable relief.

(c) Upon commencement of any action brought under subsection (a) of this section, the clerk of court shall mail a copy of the complaint or other initial pleading to the attorney general and, upon entry of any judgment or decree in the action, shall mail a copy of the judgment or decree to the attorney general.

(d) In any action brought by a person under this section, the court may award, in addition to the relief provided in this section, reasonable attorney's fees and costs.

(e) Any permanent injunction, judgment, or order of the court made under § 6-13.1-5 shall be prima facie evidence in an action brought under this section that the respondent used or employed a method, act, or practice declared unlawful by § 6-13.1-2.

## CLASS ALLEGATIONS

84.    Plaintiff brings this claim on behalf of a class and subclass pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

85.    The class consists of: (a) all persons in Rhode Island (b) who leased vehicles (c) on a lease that was held by Hyundai Lease Titling Trust or serviced by Hyundai Capital America at its end (d) where the person purchased the vehicle at the end of the lease and (e) was charged more than the lease end purchase price, (f) where the termination of the lease was on or after a date 4 years prior to the filing of this action.

86.    The subclass consists of persons whose lease was originated through Grieco Hyundai LLC or where Grieco Hyundai LLC handled the lease-end purchase.

87.    The exact number of class members is unknown and not available to Plaintiff at this time, but it is clear that there are more than 40 persons who fall into each class and subclass definition in this action and that individual joinder is impracticable. Class members can be identified through Defendants' records.  Defendants are required to maintain records of lessees and purchasers.

88.    Plaintiff reserves the right to modify the class definition as the contours and parameters of the class become apparent through discovery in this matter and to account for any legal and factual developments.

89.    Plaintiff's claims are typical of the claims of other members of the class and subclass, in that all claims are based on the same factual and legal theories.

90.    Plaintiff will fairly and adequately represent and protect the interests of the classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no

interest antagonistic to those of the class members, and Defendants have no defenses unique to Plaintiff.

91.     There are questions of law and fact common to the claims of Plaintiff and the class members, and those questions predominate over any questions that may affect individual members of the class. The common questions include:

a.     Whether Hyundai Lease Titling Trust and its servicer Hyundai Capital America are obligated to charge the lease end purchase price, whether they carry out the transaction directly or through a Hyundai or Kia dealer.  (Count I)

b.     Whether Hyundai Lease Titling Trust breaches its lease contract when the consumer is charged more than the lease end purchase price to acquire the leased vehicle at the end of the lease.  (Count I)

c.     Whether the disclosures in the lease are inaccurate because of the practice of allowing Hyundai and Kia dealers to charge more than the lease end purchase price.  (Count II)

d.     Whether the practice of Hyundai Lease Titling Trust, Hyundai Capital America and the dealers through which lease end purchase transactions are carried out is unfair and deceptive.  (Count III)

e.     Whether the Hyundai and Kia dealers, and Hyundai Capital America as agent of Hyundai Lease Titling Trust, are tortiously interfering with the lease contract.  (Count IV)

f.     Whether the Hyundai and Kia dealers unjustly enrich themselves (Count V).

92.     Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages suffered by the individual members of the class will likely be relatively small, especially given the burden and expense of individual prosecution of the

complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and subclass members and against Defendants for:

> i.    The greater of (a) actual damages equal to the excess paid over the lease end purchase price or (b) $1500;
>
> ii.    Attorney's fees, litigation expenses and costs of suit;
>
> iii.    Such other or further relief as the Court deems proper.

## COUNT IV – TORTIOUS INTERFERENCE WITH CONTRACT

93.    Plaintiff incorporates 1-54.

94.    This claim is against Grieco Hyundai LLC.

95.     Hyundai and Kia dealers that charge more than the lease end purchase price tortiously interfere with the lease contracts, which entitle the consumer to purchase for the lease end purchase price.

## CLASS ALLEGATIONS

96.    Plaintiff brings this claim on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

97.    The class consists of: (a) all persons in Rhode Island (b) who leased vehicles (c) on a lease that was held by Hyundai Lease Titling Trust or serviced by Hyundai Capital America at its end (d) where the person purchased the vehicle at the end of the lease through Grieco Hyundai LLC, and (e) was charged more than the lease end purchase price, (f) where the termination of the lease

was on or after a date 4 years prior to the filing of this action.

98.     The exact number of class members is unknown and not available to Plaintiff at this time, but it is clear that there are more than 40 persons who fall into each class and subclass definition in this action and that individual joinder is impracticable. Class members can be identified through Defendants' records.  Defendants are required to maintain records of lessees and purchasers.

99.     Plaintiff reserves the right to modify the class definition as the contours and parameters of the class become apparent through discovery in this matter and to account for any legal and factual developments.

100.    Plaintiff's claims are typical of the claims of other members of the class, in that all claims are based on the same factual and legal theories.

101.    Plaintiff will fairly and adequately represent and protect the interests of the classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the class members, and Defendants have no defenses unique to Plaintiff.


102.    There are questions of law and fact common to the claims of Plaintiff and the class members, and those questions predominate over any questions that may affect individual members of the class. The common questions include:

> a.    Whether Hyundai Lease Titling Trust and its servicer Hyundai Capital America are obligated to charge the lease end purchase price, whether they carry out the transaction directly or through a Hyundai or Kia dealer.  (Count I)
>
> b.    Whether Hyundai Lease Titling Trust breaches its lease contract when the consumer is charged more than the lease end purchase price to acquire the leased vehicle at the end of the lease.  (Count I)

  c.  Whether the disclosures in the lease are inaccurate because of the practice of allowing Hyundai and Kia dealers to charge more than the lease end purchase price. (Count II)

  d.  Whether the practice of Hyundai Lease Titling Trust, Hyundai Capital America and the dealers through which lease end purchase transactions are carried out is unfair and deceptive. (Count III)

  e.  Whether the Hyundai and Kia dealers, and Hyundai Capital America as agent of Hyundai Lease Titling Trust, are tortiously interfering with the lease contract. (Count IV)

  f.  Whether the Hyundai and Kia dealers unjustly enrich themselves (Count V).

103. Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual members of the class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

  WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and subclass members and against Defendant Grieco Hyundai LLC for:

  i.  Actual damages;

  ii.  Punitive damages;

  iii.  Costs of suit;

  iv.  Such other or further relief as the Court deems proper.

## COUNT V – UNJUST ENRICHMENT

104.    Plaintiff incorporates 1-54.

105.    This claim is against Grieco Hyundai LLC.

106.     Hyundai and Kia dealers that charge more than the lease end purchase price unjustly enrich themselves in a manner contrary to equity and good conscience, and should be required to disgorge the amount charge in excess of the lease end purchase price.

## CLASS ALLEGATIONS

107.    Plaintiff brings this claim on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

108.    The class consists of: (a) all persons in Rhode Island (b) who leased vehicles (c) on a lease that was held by Hyundai Lease Titling Trust or serviced by Hyundai Capital America at its end (d) where the person purchased the vehicle at the end of the lease through Grieco Hyundai LLC, and (e) was charged more than the lease end purchase price, (f) where the termination of the lease was on or after a date 4 years prior to the filing of this action.

109.    The exact number of class members is unknown and not available to Plaintiff at this time, but it is clear that there are more than 40 persons who fall into each class and subclass definition in this action  and that individual joinder is impracticable. Class members can be identified through Defendants' records.  Defendants are required to maintain records of lessees and purchasers.

110.    Plaintiff reserves the right to modify the class definition as the contours and parameters of the class become apparent through discovery in this matter and to account for any legal and factual developments.

111.    Plaintiff's claims are typical of the claims of other members of the class and subclass, in that all claims are based on the same factual and legal theories.

112.    Plaintiff will fairly and adequately represent and protect the interests of the classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no

interest antagonistic to those of the class members, and Defendants have no defenses unique to Plaintiff.

113.    There are questions of law and fact common to the claims of Plaintiff and the class members, and those questions predominate over any questions that may affect individual members of the class. The common questions include:

a.    Whether Hyundai Lease Titling Trust and its servicer Hyundai Capital America are obligated to charge the lease end purchase price, whether they carry out the transaction directly or through a Hyundai or Kia dealer.  (Count I)

b.    Whether Hyundai Lease Titling Trust breaches its lease contract when the consumer is charged more than the lease end purchase price to acquire the leased vehicle at the end of the lease.  (Count I)

c.    Whether the disclosures in the lease are inaccurate because of the practice of allowing Hyundai and Kia dealers to charge more than the lease end purchase price.  (Count II)

d.    Whether the practice of Hyundai Lease Titling Trust, Hyundai Capital America and the dealers through which lease end purchase transactions are carried out is unfair and deceptive.  (Count III)

e.    Whether the Hyundai and Kia dealers, and Hyundai Capital America as agent of Hyundai Lease Titling Trust, are tortiously interfering with the lease contract.  (Count IV)

f.    Whether the Hyundai and Kia dealers unjustly enrich themselves (Count V).

114.    Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages suffered by the individual members of the class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the

individual members of the class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and subclass members and against Defendant Grieco Hyundai LLC for:

        i.        Appropriate damages;

        ii.        Costs of suit;

        iii.        Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

*/s/ Christopher M. Lefebvre*
Christopher M. Lefebvre

Christopher M. Lefebvre
THE CONSUMER AND FAMILY LAW
CENTER OF CLAUDE F. LEFEBVRE,
CHRISTOPHER M. LEFEBVRE, P.C.
2 Dexter Street
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (FAX)

*pro hac vice admission to be sought*

Daniel A. Edelman
Tara L. Goodwin
Heather Kolbus
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603

(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


*/s/ Christopher M. Lefebvre*
Christopher M. Lefebvre